UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:09-cr-00395-ECR-PAL |
| | ) | 2:10-cv-01761-ECR |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| RAFAEL ROJO-MAYA, | ) | |
| Defendant. | ) | |

On March 31, 2011, Defendant Rojo-Maya filed an Amended Motion (#47) to Vacate, Set Aside or Correct Sentence by a person in federal custody. The Government filed an opposition (#49) to the motion on April 20, 2011.

The amended motion is based upon Defendant's claim that his counsel was ineffective at sentencing for failure to raise "cultural assimilation" as a basis for departure.

In considering Defendant's motion, we first review the question of whether there is any reasonable likelihood that had Defendant's attorney contended for a departure based on cultural assimilation it would have resulted in a departure.

At the time Defendant was sentenced, March 17, 2010, the 2009 United States Sentencing Guidelines ("U.S.S.G.") were in effect. It does not appear that at that time there was any specific Guideline permitting departure on the basis of

cultural assimilation on an unlawful reentry charge. However, at the of Defendant's sentencing, cultural assimilation was well recognized as a basis for departure or variance by Ninth Circuit jurisprudence.

The Ninth Circuit case of <u>United States v. Rivas-Gonzalez</u>, 384 F.3d 1034 (9th Cir. 2004), held cultural assimilation to be the basis for departure must occur after defendant has legally entered this country. Cultural assimilation as a basis for departure may not be asserted if it occurs after an illegal entry. The Pre-Sentence Report indicates that Defendant moved from Mexico to Las Vegas, Nevada, in 1996 to seek employment opportunities. He was then 19 years of age. The record does not disclose if that entry was legal or illegal, but the fact that Defendant subsequently obtained a permanent residence card in 1999 is possible evidence that his original entry might have been lawful. Defendant was subsequently deported to Mexico on March 18, 2003, after a conviction in the Southern District of California for importation of marijuana. While cultural assimilation during the period of 1996 - 2003 could have been after a lawful entry, cultural assimilation claimed for any time after 2003 cannot be counted. There is therefore a period of 7 years when cultural assimilation could have occurred when Defendant was between ages 19 and 26. Incidentally, we note that children who are brought across the border unlawfully by their parents are usually exempted from the rule of no cultural assimilation unless there has been a lawful entry. Defendant would not qualify for that exemption however because he came to the United States at age 19 on his own to seek employment.

Some of the other tests for cultural assimilation which were used at the time of Defendant's sentencing were:

(1) *Extraordinary circumstances*. Such do not appear to exist in this case.

(2) *Defendant was a de facto American citizen and is being punished by being banished from "his" country*. Defendant, all in all, does not

1                     meet the test.

(3) *Defendant's entry was due to familial and custodial ties, rather than economic.* Defendant had a wife and child residing in the United States at the time of his illegal reentry in 2005 and may benefit from this test.

(4) *Defendant had unusual cultural or family or community ties to the United States.* There is no evidence to indicate any such ties existed.

(5) *Defendant had children in United States schools.* In this case, with a child born approximately in the year 2001, Defendant may have had a child in school at the time he was sentenced.

(6) *Defendant speaks English.* An interpreter was sworn and translated the sentencing proceedings from English to Spanish for the Defendant. It appears Defendant does not speak or adequately understand English to any reasonable degree.

(7) *Defendant has a history of employment in the United States.* There is no evidence one way or the other in the record with respect to this test.

(8) *Defendant's community activities.* There is no evidence of any community activities by Defendant in this country.

(9) *Defendant's substantial recent criminal violations.* Cultural assimilation even with the underworld may be considered cultural assimilation if it is general criminal activity of American-style as opposed to Mexican-style.

    Arrests may be taken into consideration as negative factors in the mix in determining whether defendant is culturally assimilated. Here, Defendant does have several reasonably recent criminal convictions, including in 2002 importation of marijuana, in 2005

disturbing the peace involving batteries on his wife, in 2007 coercion also involving batteries on his wife, and in 2007 D.U.I. Defendant was, at the time of his sentencing here, pending sentencing in Nevada State Court for trafficking in a controlled substance, cocaine. He had previously entered a plea of guilty.

Defendant also suffered an arrest for domestic battery in 2000, with prosecution denied.

(10) *Defendant was educated in the United States*. All of Defendant's formal education through the 12th grade occurred in Mexico.

(11) There is no evidence to support a claim of cultural assimilation on the basis of Defendant's interest in the performing arts, American culture or friendship with Americans.

(12) Defendant's age of 19 at his first entry suggests he was not culturally assimilated at the time he was sentenced but rather that his cultural assimilation was with his native Mexico.

Taking all of the above factors into consideration, it is unlikely that evidence of cultural assimilation would have affected Defendant's sentence.

Although it appears it was adopted after Defendant was sentenced, Application Note 8 to U.S.S.G. 2L1.2 is helpful in testing whether Defendant would have had any reasonable case for cultural assimilation that would have likely affected his sentence. The Application Note 8 largely tracks the preexisting case law as of the time Defendant was sentenced.

Under this Application Note, such a departure should be considered only in cases where:

(A) The defendant formed cultural ties primarily with the United States from having resided continuously in the United States since childhood. Defendant cannot meet this test.

(B) Those cultural ties provided the primary motivation for the

4

defendant's illegal reentry or continued presence in the United States. There is no evidence that Defendant originally entered this country because of cultural ties; he came to seek employment. There is some evidence he may have reentered in 2005 and remained here because of his wife and child. However, familial ties themselves are not sufficient to meet the test of cultural assimilation.

We conclude that Defendant could not have met this "only" test.

The U.S.S.G. 2L1.2 Application Note 8 includes additional considerations:

(1) *The age in childhood at which defendant began residing continuously in the United States*. Defendant came to this country at age 19, as an adult, after childhood.

(2) *Whether and for how long defendant attended school in the United States*. Defendant completed school in Mexico before he entered this country. He never attended school in the United States.

(3) *The duration of defendant's continued residence in the United States*. We count 1996 -2003 and 2005 -2010. This is 12 years.

(4) *The duration of defendant's presence outside the United States*. Defendant resided in Mexico for 21 years.

(5) *The nature and extent of defendant's familial and cultural ties outside the United States*. Defendant's parents reside in Mexico; his father owns a restaurant there and his mother is a homemaker. Defendant has three adult siblings, all of whom reside in Mexico. Defendant had a good childhood in Mexico; all of his necessities were met there. The Pre-Sentence Report states that Defendant told the probation officer that his wife and family were, at the time of sentencing, awaiting his release to return to Mexico where the family will reside once he was deported.

(6) *The seriousness of defendant's criminal history*. As set forth above,

5

1 |     Defendant has a serious criminal history. He was a Criminal History Category III under the Sentencing Guidelines (U.S.S.G.) at the time of sentencing.

(7) *Whether defendant engaged in additional criminal activity after reentering the United States.* Defendant had misdemeanor convictions both involving domestic battery after 2005 when he returned to the United States. These occurred in 2005 and 2007. He also had a D.U.I. conviction in 2007, and a trafficking in controlled substance plea of guilty awaiting sentencing in 2009. Defendant did engage in additional criminal activity after returning to the United States unlawfully in 2005.

    Defendant substantially fails each of these seven considerations contained in the present Guidelines.

    It is clear that cultural assimilation could not have been reasonably argued as a basis for departure at Defendant's sentencing hearing. Raising the issue could have resulted in calling to the Court's attention many negative things concerning Defendant's status and conduct. Such could have detracted from counsel's other arguments presented at sentencing.

    Failing to present a claim of cultural assimilation could not be considered to constitute ineffective assistance of counsel.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

IT IS THEREFORE ORDERED that Defendant's Amended Motion (# 47) pursuant to 28 U.S.C. § 2255 is <u>DENIED</u>.

The Court finds that an appeal from this order would be meritless. We therefore, deny a certificate of appealability.

The Clerk shall enter judgment accordingly.

Dated this 23rd day of September 2011.

_____
EDWARD C. REED, JR.
United States District Judge